1  Mark L. Javitch (CA SBN 323729)
   JAVITCH LAW OFFICE
2  480 S. Ellsworth Ave
   San Mateo, CA 94401
3  Telephone: 650-781-8000
   Facsimile: 650-648-0705
4  mark@javitchlawoffice.com
5  *Attorney for Plaintiffs*

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                     SAN FRANCISCO DIVISION

10

11 CLYDE CHENG, BETH PASCAL, ALLISON      Case No.:  3:19-cv-05781
   L. PASCAL JAVITCH
12                                          **COMPLAINT**
              Plaintiffs,
13                                          **JURY TRIAL DEMANDED**
   v.
14
   ROAD AMERICA MOTOR CLUB INC.,
15 D/B/A/ ROAD AMERICA MOTOR CLUB, a
   Florida Corporation, MATRIX WARRANTY
16 SOLUTIONS INC, a Nevada Corporation,
   MATRIX FINANCIAL SERVICES LLC, a
17 Texas limited liability company, SING FOR
   SERVICES LLC D/B/A MEPCO, a Delaware
18 limited liability company, CLEAR PATH
   AUTOMOTIVE aka CPA, an unknown business
19 entity, COMPLETE ADVANCED AUTO, an
   unknown business entity, and DOES 1-5
20
              Defendants
21

22                        **<u>COMPLAINT</u>**

23     1.    Plaintiffs CLYDE CHENG, BETH PASCAL, ALLISON L. PASCAL JAVITCH

24 ("Plaintiffs") bring this Complaint and Demand for Jury Trial against Defendants ROAD AMERICA

25 MOTOR CLUB INC D/B/A ROAD AMERICA MOTOR CLUB., a Florida Corporation, ("**Road**

26 **America**"), MATRIX WARRANTY SOLUTIONS INC D/B/A THE ELEMENT ("**Element**"), a

27

28                                1

Nevada Corporation, MATRIX FINANCIAL SERVICES LLC DBA MATRIX PAYMENT SOLUTIONS ("**Matrix**"), a Delaware Limited Liability Company; SING FOR SERVICES LLC D/B/A MEPCO ("**MEPCO**"), CLEAR PATH AUTOMOTIVE D/B/A CPA ("**CPA**"), an unknown entity, COMPLETE ADVANCED AUTO ("**Complete**"), an unknown entity a Delaware Limited Liability Company,  and DOES 1-5, (together, "**DOE Defendants**") to stop their illegal practice of making or permitting their authorized agents to make on their behalf unauthorized calls that play prerecorded voice messages to consumers' telephones nationwide.

## NATURE OF THE ACTION

2.      Defendants operate a multifaceted scheme to sell "vehicle protection plans" pursuant to illegal robocalls placed without consent in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.      Further, Defendants create and use shell companies that operate without valid mailing addresses, are unlicensed and hide all identifying contact information from consumers in order to shield Defendants from liability for their unauthorized sales practices.

4.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5.      The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants' use of technological equipment to spam consumers with its advertising on a grand scale.

6.      By placing the calls at issue, Defendants have violated the statutory rights of Plaintiffs.

7.      In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27

F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

8.      By placing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiffs.

9.      Plaintiffs therefore seek an injunction requiring Defendants to stop their unconsented calling and unfair business practices, as well as an award of actual and statutory damages, together with costs and reasonable attorneys' fees.

### PARTIES

10.     Plaintiff ALLISON L. JAVITCH is a natural person and is a citizen of the Northern District of California.

11.     Plaintiff BETH PASCAL is a natural person and is a citizen of the Northern District of California.

12.     Plaintiff CLYDE CHENG is a natural person and is a citizen of the Northern District of California.

13.     Defendant ROAD AMERICA is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 7300 Corporate Center Drive, Suite 601, Miami, Florida 33126.

14.     Defendant ELEMENT is a corporation organized and existing under the laws of the State of Nevada with its principal place of business at 2520 St. Rose Parkway, Suite 319, Henderson, Nevada 89074.

15.     Defendant MATRIX is limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 3100 McKinnon Street, Suite 420, Dallas, TZ 75201.

16.     Defendant CPA is an unknown entity with its principal place of business at 2091 Business Center Drive, Irvine, California 92614.

17.     Defendant COMPLETE is an unknown entity with its principal place of business at 2091 Business Center Drive, Irvine, California 92614 and/or 1800 East Dyer Road, Santa Ana, California 92705.

18.     Defendant MEPCO is a limited liability company organized in the state of Delaware with its principal place of business at 205 North Michigan Avenue, Suite 2200, Chicago, Illinois 60601.

19.     The true names and capacities of the Defendants sued herein as DOES 1-5, inclusive,  are currently unknown to Plaintiffs, who therefore sues such Defendants by their fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

20.     Plaintiffs do not yet know the identity of Defendants' employees/agents identified as DOES 1-5 that had direct, personal participation or personally authorized the conduct found to have violated the statute and were not merely tangentially involved.

### JURISDICTION AND VENUE

21.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

22.     This Court has specific personal jurisdiction over Defendants because the phone calls from which this lawsuit directly arose are the result of the purposefully directed sales efforts by

4

Defendants into California. Plaintiffs are California residents, and answered the calls from Defendants while they were in California.

23.     This Court has supplemental jurisdiction over all Plaintiff's California and common law claims under 28 U.S.C § 1367(a) because they are so related to the TCPA claims in this action that arise under the Court's original jurisdiction that they form part of the same case or controversy under Article III.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendants called into this District in the State of California, which is the wrongful conduct giving rise to this case.

**COMMON FACTUAL ALLEGATIONS**

25.     Defendants Road America, Element, Matrix, CPA, Complete, MEPCO and DOES 1-5 sell, administer and finance vehicle protection plans.

26.     Under the membership terms and conditions, Defendants Road America, Element and Matrix's vehicle protection plans are "not insurance contracts."

27.     To increase the sales of their vehicle protection plans and avoid paying for legitimate and legal forms of advertising, CPA, Complete hired Defendant DOES 1-5 to implement a campaign to make telemarketing calls to Plaintiffs as well as thousands of consumers around the country simultaneously, that promoted the products of Road America, Element, and Matrix, that were financed by MEPCO.

28.     Specifically, Defendants amassed the names, phone numbers, and vehicle information for thousands of consumers, from unknown sources, and then placed unsolicited calls to Plaintiffs' cellular telephones using prerecorded voice messages offering vehicle protection plans.

29.     When Plaintiffs answered their phones, they heard an artificial or prerecorded voice advertising Defendants' services.

30.     Defendants failed to obtain consent from Plaintiffs before bombarding their phones with

their illegal advertising.

31.    Further, Defendants falsely told Plaintiffs that their warranties had expired in order to pressure Plaintiffs to make a purchase.

## DEFENDANTS FALSIFIED THEIR CALLER ID NUMBERS

32.    Defendants used tactics to trick Plaintiffs into answering their calls.

33.    Defendants used both a (650) area code, which is the same area code as Plaintiffs, or a (510) area code, which is also a common and familiar area code to Plaintiffs associated with the San Francisco Bay Area.

34.    Defendants concealed their actual phone number and "spoofed" a phone number beginning with "650" and "510" in order to trick Plaintiffs into answering a familiar number.

35.    Plaintiffs were more likely to answer a call from the "650" or "510" area codes – because of their contacts in those area codes and the likelihood that the call was coming from someone or some business that Plaintiffs know, were expecting or were familiar with.

36.    When Plaintiffs answered their cell phone thinking a real person was calling, Defendants pulled a bait and switch by playing a prerecorded voice message.

37.    Upon information and belief, Defendants do not have a call center in the "650" or "510" area code, therefore the only purpose of calling Plaintiffs from this area code was to harass and deceive Plaintiffs into answering calls they were attempting to screen.

38.    Defendants' "510" and "650" numbers were "spoofed" because when Plaintiffs attempted to call the number back, the calls did not go through because the numbers were not valid.

## FACTS SPECIFIC TO PLAINTIFF ALLISON L. PASCAL JAVITCH

39.    On or about August 7, 2019 at 2:22PM and then again on August 8, 2019 at 11:47 AM, Plaintiff JAVITCH received two telephone calls from Defendant CPA or Defendant Complete or Defendant DOES 1-5 on her cellular phone.

6

40.    Plaintiff JAVITCH's caller identification system identified that Defendant CPA, Defendant Complete and/or DOES 1-5 were calling from telephone number +1 (510) 537-9181, a "spoofed" number.

41.    By using a "spoofed" number, Defendants CPA, Defendant Complete and/or DOES 1-5 deliberately falsified the information transmitted to Plaintiffs JAVITCH's caller ID to disguise its identity.

 

42.    When Plaintiff JAVITCH answered the phone, she heard an artificial or prerecorded voice message advertising vehicle protection plans.

43.    Both times the prerecorded message instructed Plaintiff JAVITCH to "press one" to receive more information about vehicle protection plans.

44.    Plaintiff JAVITCH pressed "one," and was connected with a live person who worked for Defendant CPA and/or Defendant Complete and/or DOES 1-5.

45.    Defendant CPA and/or Defendant Complete represented to Plaintiff JAVITCH that her vehicle warranty had expired and asked if Plaintiff JAVITCH wanted to purchase a new plan through Defendant Matrix.

46.    Plaintiff JAVITCH asked to see the website showing the plans offered by the live telemarketing agent. The live agent pointed Plaintiff JAVITCH to the website www.elementprotectionplans.com and told Plaintiff JAVITCH that she would be receiving the Ultimate Saver Plan listed on that website. The live agent informed Plaintiff JAVITCH that Defendant Matrix would underwrite a plan for Plaintiff JAVITCH'S vehicle, Defendant Complete would be the billing processor, and that Defendant MEPCO would be handling the monthly payments as the financier.

47.    The live telemarketing agent said that Plaintiff JAVITCH's credit card would be charged an initial payment of $195.00, which would be processed by Complete, the billing processor.

48.    On August 8, 2019, Plaintiff JAVITCH's credit card was charged by Defendant Complete in the amount of $195.00.

49.    On August 9, 2019, Plaintiff JAVITCH received an email from Defendants CPA and/or Defendant Complete with a copy of the Ultimate Saver Policy from Defendant Matrix and Defendant Road America.



3:19-cv-05781

50.     When Plaintiff JAVITCH contacted the credit card company to get more information about Complete, the credit card company informed Plaintiff JAVITCH that they had no address on file for Defendant Complete. The credit card company investigated further by calling Defendant Complete and connecting Plaintiff JAVITCH with Defendant Complete.

51.     JAVITCH called Defendant Complete, but the live agent for Complete refused to reveal its identity to Plaintiff JAVITCH. Defendant Complete informed Plaintiff JAVITCH that it was a "third party" customer service administrator. Defendant Complete berated Plaintiff JAVITCH for asking questions and trying to get any identifying information about the company she purchased from.

52.     The agent for Complete told Plaintiff JAVITCH that everything she needed was given to her on the element protection plan website and the email she received with the "soft copy" of the vehicle protection plan.

53.     Subsequently, Plaintiff JAVITCH received a hard copy of the vehicle protection plan, which was called a "motor club membership" in the mail identifying Defendant CPA as the selling

company, Defendant MEPCO as the finance company, Defendant Matrix and Defendant Road America as the benefits providers.

54.    Under the membership terms and conditions of the vehicle protection plan that Plaintiff JAVITCH received, it stated, "Please note: this motor club membership does not replace your vehicle insurance coverage nor is it intended to comply with any financial responsibility law(s). This is not an automobile liability or automobile physical damage insurance contract. Except in Wisconsin, this is not an insurance contract. Defendants Road America, Element and Matrix's vehicle protection plans are 'not insurance contracts.'"

55.    On or about August 26, 2019, Plaintiff JAVITCH received by mail the following several documents from Defendant Matrix under the name "Matrix Payment Solutions powered by MEPCO": (1) Welcome letter (2) Acceptance Notice (3) Confirmation of Preauthorized ACH/CC.

56.    All of the documents identified two additional shell companies that Defendants were operating under (1) CLEAR PATH AUTOMOTIVE and (2) MATRIX PAYMENT SOLUTIONS in order to skirt liability under the TCPA for their unlawful sales practices.

57.    CLEAR PATH AUTOMOTIVE was now identified as the party Plaintiff JAVITCH was directed to contact with "questions regarding the purchase of this contract."

58.    MATRIX PAYMENT SOLUTIONS was now identified as the party "responsible for the marketing, sale, design, administration of claims or payment of claims under this vehicle service contract."

59.    This was the first time Plaintiff JAVITCH had seen these additional business names associated with the purchase of the vehicle protection plan.

60.    On September 3, 2019, Plaintiff JAVITCH called Defendant MEPCO at (800) 397-6767 to cancel the "automatic payments" scheduled by Defendant MEPCO to her credit card, which she did not request. Defendant MEPCO's telephone system instructed Plaintiff JAVITCH to contact CLEAR

PATH AUTOMOTIVE, and after pressing "one" Defendant MEPCO automatically transferred Plaintiff JAVITCH to CLEAR PATH AUTOMOTIVE.

61.     When the live representative answered, it was the same representative that worked for Defendant CPA and the same person that was represented to work for Defendant Complete during the call with Plaintiff JAVITCH's credit card company. This "third party" representative again refused to provide Plaintiff JAVITCH with the contact information for CLEAR PATH AUTOMOTIVE and repeatedly informed Plaintiff JAVITCH that she worked as a "third party" answering service for Defendant MEPCO, Defendant Matrix, Defendant Element and Defendant CPA.

62.     However, even though the representative was only a "third party" answering service, she represented that she had authorized authority from Defendants to cancel Plaintiff JAVITCH's contract with Defendants.

63.     Plaintiff JAVITCH never consented to receive calls from Defendants on her cellular phone. Plaintiff JAVITCH has no relationship with Defendants and has never requested that Defendants contact Plaintiff JAVITCH in any manner, let alone to place prerecorded voice calls to her cell phone.

## FACTS SPECIFIC TO PLAINTIFF BETH PASCAL

64.     On or about August 22, 2019 at 9:29 AM, Plaintiff PASCAL received a telephone call from Defendant CPA or Defendant Complete or DOES 1-5 on her cellular phone.

65.     Plaintiff PASCAL'S caller ID displayed that the calls were from telephone number 1-510-868-4381, which was a "spoofed" number.

66.     Defendants used the "spoofed" number to trick Plaintiff PASCAL into answering by showing a familiar area code.

67.     By using a "spoofed" number, Defendants CPA, Defendant Complete and/or Defendant Does 1-5 deliberately falsified the information transmitted to Plaintiff PASCAL's caller ID to disguise their identity.

11



68.    When Plaintiff PASCAL answered the phone, she heard an artificial or prerecorded voice message advertising vehicle protection plans.

69.    The message instructed Plaintiff PASCAL to "press one" to receive more information about vehicle protection plans.

70.    Plaintiff PASCAL pressed "one," and was connected with a live person who worked for Defendant CPA and/or Defendant Complete and/or DOES 1-5.

71.    Defendant CPA and/or Defendant Complete represented to Plaintiff PASCAL that her Lexus vehicle warranty had expired and asked if Plaintiff  PASCAL wanted to purchase a new plan through Defendant Matrix.

72.    The live telemarketing agent said that Plaintiff PASCAL's credit card would be charged an initial payment of $195.00, which would be processed by Defendant Complete, who was the billing processor.

73.    On August 22, 2019, Plaintiff PASCAL's credit card was charged by Defendant Complete in the amount of $195.00.

74.    On August 23, 2019, Plaintiff PASCAL received an email from Defendants CPA and/or Defendant Complete with a copy of the Ultimate Saver Policy from Defendant Matrix and Defendant Road America.



3:19-cv-05781

75.    The representative informed Plaintiff PASCAL that she would have 30 days to review coverage and cancel but that she would be charged a $75.00 fee even if she cancelled within the 30 day period.

76.    The representative intentionally refused to disclose the identity of the company that he worked with. The only information the telemarketing agent gave Plaintiff PASCAL was the customer service number of 866-327-6685.

77.    On September 3, 2019, when Plaintiff PASCAL called to cancel the plan, Plaintiff PASCAL was again connected to a representative from Defendants. This representative refused to disclose Defendant CPA, Defendant Complete or DOES 1-5's address or any identifying contact information to Plaintiff PASCAL.

### FACTS SPECIFIC TO PLAINTIFFS CLYDE CHENG

78.    On or about July 16, 2019 Plaintiff CHENG received a telephone call from Defendant CPA or Defendant Complete or DOES 1-5 on his cellular phone.



3:19-cv-05781

79.     The artificial or prerecorded voice message instructed Plaintiff CHENG to "press one" to receive more information about vehicle protection plans.

80.     Plaintiff CHENG pressed "one," and was connected with a live person who worked for Defendant CPA and/or Defendant Complete and/or DOES 1-5.

81.     Because Defendants and/their agents refuse to reveal and intentionally hide their identities, in order to investigate who was responsible for the robocall, Plaintiff CHENG attempted to purchase the vehicle protection plan from the telemarketing agent.

82.     Plaintiff CHENG gave the telemarketing agent a credit card number to purchase the vehicle protection plan.

83.     The telemarketing agent told Plaintiff CHENG that his credit card would be charged an initial payment of $195.00 by Defendant Complete and that Defendant MEPCO is processing the fee.

84.     The telemarketing agent informed Plaintiff CHENG  that he would have 30 days to review coverage and cancel but that he would be charged a $75.00 fee even if he cancelled within the 30 day period.

85.     The telemarketing agent hid and refused to disclose the identity of the company that he worked with. The only information the telemarketing agent gave Plaintiff CHENG was the customer service number of 866-327-6685.

## THEORIES OF LIABILITY AGAINST DEFENDANTS

86.     Even if Defendants Road America, Element, Matrix and MEPCO allege that they are not liable because they did not directly make the TCPA-violating phone call, Defendants are jointly and severally liable for their violations of the TCPA under the following theories of liability: (1) Direct Liability, (2) Actual Authority (3) Apparent Authority (4) Ratification (5) Acting in Concert (6) Joint Enterprise.

## DIRECT LIABILITY UNDER THE TCPA

87.    Defendants' scheme involves the use of illegal robocalling to promote their services.

88.    Defendants Complete, CPA and DOES 1-5 have direct liability under the TCPA for calling Plaintiffs' cellular phones using a prerecorded voice.

89.    Defendant Matrix, Defendant MEPCO, Defendant Element and Defendant Road America are also directly liable under the TCPA for outsourcing their telemarketing to Defendants Complete, CPA and/or DOES 1-5.

90.    On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.   As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## AGENCY ALLEGATIONS

91.    The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

92.    Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiffs have no way to identify the exact parties who called their phone. It could have been Defendant CPA, Defendant Complete or some other unknown company (Defendant Does 1-5).

93.    However, for the purposes of TCPA liability, Plaintiffs are not expected to know this information at the pleading stage.

94.    The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

95.    Even if each of the Defendants allege that they did not personally make the TCPA-violating calls, Defendants are liable because they took steps to cause the calls to be made, and because the calls were made pursuant to Defendants' actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

## ACTUAL AUTHORITY

96.    Defendant Road America, Defendant Element, Defendant Matrix and Defendant MEPCO gave actual authority to Defendant Complete, Defendant CPA and DOES 1-5 to generate prospective customers.

97.    Defendant CPA, Defendant Complete and DOES 1-5 acted in concert with Defendant Road America, Defendant Matrix, Defendant Element, and Defendant MEPCO who have been able to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

98.    Defendant CPA, Defendant Complete and DOES 1-5 had actual authority to make robocalls to Plaintiffs on behalf of Defendant Road America, Defendant Matrix, Defendant Element, and Defendant MEPCO.

99.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations*

*Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

100.    In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

101.    More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

**APPARENT AUTHORITY**

102.    The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28  CC Rcd at 6592 (¶ 46).

103.    Defendant Matrix, Defendant Element, Defendant MEPCO, and Defendant Road America authorized Defendant CPA, Defendant Complete and DOES 1-5  to generate prospective customers for them.

104.    The integration of their sales efforts with robocalling by Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America used was so seamless that it appeared to Plaintiffs that Defendant CPA, Defendant Complete, and DOES 1-5 were one and the same company with Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America.

105.    Plaintiffs reasonably believed and relied on the fact that Defendant Complete, Defendant CPA and DOES 1-5 had received permission and instructions to sell to Plaintiffs a vehicle protection plan from Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America.

## RATIFICATION

106.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America knowingly accepted business that originated through the illegal robocalls placed by Defendant Complete, Defendant CPA and DOES 1-5.

107.    By accepting Plaintiffs' contracts, Defendant Element, Defendant Matrix, Defendant MEPCO and Defendant Road America "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Defendant Complete, Defendant CPA, and DOES 1-5, as described in the Restatement (Third) of Agency.

108.    Defendant Matrix, Defendant Element, Defendant MEPCO, and Defendant Road America ratified Defendant Complete, Defendant CPA and Doe 1-5's TCPA violations by knowingly accepting the benefit of Plaintiffs as new consumers who purchased contracts, despite the fact that Plaintiffs were the victim of Defendants' illegal marketing scheme.

109.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America permitted their salespeople to solicit to prospective customers, including Plaintiffs, while turning a blind eye to the illegal way in which the potential customer was identified.

3:19-cv-05781

110.     Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America ratified Defendant Complete, Defendant CPA and DOES 1-5's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

111.     Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America's ratification caused Defendant Complete, Defendant CPA and DOES 1-5 to have actual authority under  Restatement § 4.01 cmt. b.

## JOINT ENTERPRISE

112.     Defendant Matrix, Defendant Element, Defendant MEPCO, Defendant Road America each had a tacit agreement with Defendant Complete, Defendant CPA and Does 1-5 for the sale of their products, or approved of after the fact, pursuant to Defendant Complete, Defendant CPA and Defendant DOES 1-5's illegal robocalls.

113.     Defendants were part of a common enterprise and had a community of interest in selling their joint vehicle protection plan.

114.     Defendants had an equal right to control the conduct thereof by specifying the type of people to be called, the questions that should be asked to prospective consumers, and how to write and execute contracts on their behalf.

115.     Defendants had a duty to exercise due care when marketing their products.

116.     Defendant Complete, Defendant CPA and Defendant DOES 1-5's violation of the TCPA is negligence per se.

117.     Because of  Defendant Complete, Defendant CPA and Defendant Does 1-5's negligence, Plaintiffs suffered damage.

118.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America are jointly and severally liable for the resulting damage caused by Defendant Complete, Defendant CPA and Defendant Does 1-5.

## ACTING IN CONCERT

119.    Defendants were part of a common design to robocall consumers and then sell vehicle protection plans.

120.    Defendants had a tacit understanding that Defendant Complete, Defendant CPA and Defendant Does 1-5 were robocalling in violation of the TCPA.

121.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America knew that Defendant Complete, Defendant CPA and Defendant Does 1-5's conduct was a breach of duty to Plaintiffs.

122.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America gave Defendant Complete, Defendant CPA and Defendant Does 1-5 substantial assistance in accomplishing the tortious result, including compensating Defendant Complete, Defendant CPA and Defendant DOES 1-5 for generating customers pursuant to robocalls and giving instructions on how to represent them and what to ask the people that had been robocalled.

123.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America furthered the tortious conduct by their cooperation with Defendant Complete, Defendant CPA and Defendant DOES 1-5, and adopting Defendant Complete, Defendant CPA and Defendant Does 1-5's robocalling and solicitation for their own benefit.

124.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America's own conduct constitutes a breach of duty to Plaintiffs.

125.    Plaintiffs' injuries are indivisible.

126.    All Defendants acted tortiously and the harm resulted from the robocalling of Defendant Complete, Defendant CPA and Defendant Does 1-5.

127.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America are jointly and severally liable for the resulting damage caused by Defendant Complete, Defendant CPA and Defendant DOES 1-5.

**FIRST CAUSE OF ACTION**
Willful and/or Knowing Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act of 1991
(Against all Defendants)

128.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

129.    Defendant Complete, Defendant CPA and Defendant DOES 1-5, are the agents of Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America, and placed calls to Plaintiffs telephones for the purpose of advertising Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America products and services.

130.    Plaintiffs never consented to receive calls from Defendants.  Plaintiffs had no relationship with Defendants.

131.    Defendants used a prerecorded or artificial voice to residential and cellular phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

132.    As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiffs' personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

133.    Not only did Defendants violate the TCPA, they did so "knowingly" and/or "willfully" under 47 U.S.C. § 227(b)(3)(C).

3:19-cv-05781

134.    If the court finds that Defendants willfully or knowingly violated this subsection, the court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

135.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America are liable for Defendant Complete, Defendant CPA and Defendant Does 1-5's violations through the vicarious liability principles pled herein.

**SECOND CAUSE OF ACTION**
Violation of Cal. Civ. Code §1770(a)(22)(A)
California Consumers Legal Remedies Act
(Injunctive Relief Against all Defendants)

136.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

137.    Cal. Civ. Code §1750, et seq., California's Consumer Legal Remedies Act, prohibits a specific list of 27 unfair business practices.

138.    Cal. Civ. Code §1770(a)(22)(A) prohibits "[d]isseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, the address or the telephone number of the caller, and without first obtaining the consent of that person to listen to the prerecorded message."

139.    Defendant Complete, Defendant CPA and Defendant DOES 1-5, as the agents of Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America violated Cal. Civ. Code §1770(a)(22)(A) by playing a prerecorded voice message to Plaintiffs' phones without first asking for their express consent with a natural voice.

140.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America are liable for Defendant Complete, Defendant CPA and Defendant DOES 1-5's violations through the vicarious liability principles pled herein.

141.    Consumers who suffer damage due to an unlawful business practice may bring an action to enjoin a corporation's unlawful business practices throughout the state on behalf of the general public.

142.    Plaintiffs are entitled to injunctive relief.

**THIRD CAUSE OF ACTION**
Negligence / Negligence Per Se
(Against all Defendants)

143.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

144.    As set out above, Defendants obtained Plaintiffs information from unknown sources and then placed robocalls to their phones from fake phone numbers and without their consent.  Once Plaintiffs were on the phone, Defendants lied to them about their warranty being expired.

145.    Defendants' TCPA violations constitutes negligence per se.

146.    The violation proximately caused Plaintiffs to incur statutory damages.

147.    Defendants' violations were not excused.

148.    The damages Plaintiffs suffered were the kind that the TCPA was designed to prevent.

149.    Defendant Matrix, Defendant Element, Defendant MEPCO and Defendant Road America are liable for damages caused by Defendant Complete, Defendant CPA and Defendant Does 1-5's through the vicarious liability principles pled herein.

**FOURTH CAUSE OF ACTION**
Unfair Violation of California Unfair Competition Law
Cal. Bus. & Prof. Code §17200.
(Against all Defendants)

150.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

151.    The unfair prong of California's Unfair Competition Law prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

152.    Defendants engaged in a pattern and practice of setting up shell companies and/or hiring unlicensed, unregistered third party entities to make robocalls to Plaintiffs from fake phone numbers, which were designed to trick Plaintiffs into answering.

153.    Defendants then attempted to shield themselves and the unlicensed third parties that they hired and their shell companies from liability by refusing to disclose any information about them.

154.    This business practice offends California's public policy preference for California citizens to be free from harassment by telemarketers calling without their consent, and for consumers to know the names and contact details of the companies who are soliciting them.

155.    This is a business practice that is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

156.    The utility of Defendants' practice is very low (as the calls are outlawed) and is vastly outweighed by the serious gravity of harm in the incursion on Plaintiffs' privacy in being tricked into answering.

157.    Plaintiffs answered their phones based on Defendants' unfair business practices and incurred statutory damages.

158.    Plaintiffs are entitled to injunctive relief under this section.

**FIFTH CAUSE OF ACTION**
First Count - Violation of California False Advertising Law
Cal. Bus. & Prof. Code §17500
(Against all Defendants)

159.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

160.    The California False Advertising Law generally prohibits "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17500.

161.    Defendants' "spoofed" calls to Plaintiffs and the Caller ID's displayed to Plaintiffs constitute direct advertising statements.

162.    Defendants' practice of displaying false information on the Caller ID when calling Plaintiffs constitute advertising statements that are untrue or misleading, and a reasonable person is likely to be misled or deceived.

163.    Defendants knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.

164.    Defendants' false statements were material in Plaintiffs' decision to answer the phone.

165.    Plaintiffs did so answer the phone based on Defendants' misrepresentation and has and continues to incur actual and statutory damages as a result.

### SIXTH CAUSE OF ACTION
Second Count - Violation of California False Advertising Law
Cal. Bus. & Prof. Code §17500
(Against all Defendants)

166.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

167.    The California False Advertising Law generally prohibits "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17500.

168.    Defendants' representations to Plaintiffs' and each of them, that Plaintiffs' needed to purchase their products because their respective auto warranties were expiring constitute advertising statements that were untrue or misleading, and a reasonable person is likely to be misled or deceived.

169.    Defendants knew, or by the exercise of reasonable care should have known, that the statements that Plaintiffs' auto warranties were expiring were untrue or misleading.

170.    Defendants' false statements were material in Plaintiffs' decision to answer the phone.

171.    Plaintiffs did so answer the phone based on Defendants' misrepresentation and have and continue to incur actual and statutory damages as a result.

26

1
2
3
4
5

**PRAYER FOR RELIEF**

**WHEREFORE**, WHEREFORE, Plaintiffs Beth Pascal, Allison Pascal Javitch and Clyde Cheng pray for the following relief:

A.  An order declaring that Defendants' actions, as set out above, violate the TCPA;

B.  An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

C.  An order declaring that Defendants' actions, as set out above, violate the CLRA;

D.  An order declaring that Defendants' actions, as set out above, constitute negligence;

E.  An order declaring that Defendants' actions, as set out above, twice violate California's False Advertising Law

F.  An injunction requiring Defendants to cease their unlawful business practices, including all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls

G.  An award of actual damages and/or statutory fines and penalties;

H.  Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: September 13, 2019

Respectfully submitted,

By:  /s/ Mark L. Javitch                    .
Plaintiffs' Attorney

Mark L. Javitch (California SBN 323729)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Javitch Law Office
480 S. Ellsworth Ave.
San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705

## Cal. Civ. Code 1780(d) Affidavit

1.    Plaintiffs reside in San Mateo County, California.

2.    The nearest court where Plaintiffs' TCPA and CLRA claims could both be heard is the Northern District of California in San Francisco, California.

3.    Therefore, this court is the proper place for the trial of the action.

4.    I declare that the foregoing is true and correct under the laws of the State of California and the United States of America.


DATED: <u>September 13, 2019</u>

Respectfully submitted,

MARK L. JAVITCH


By:  <u>/s/ Mark L. Javitch          </u>.
*Attorney for Plaintiffs*

3:19-cv-05781